UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RICHARD LAWMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 15-cv-01202-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND REQUEST FOR CLARIFICATION OF EFFECT OF SUMMARY JUDGMENT ORDER**<br><br>Re: Dkt. Nos. 86, 95, 96 |

Plaintiff Gary Richard Lawman, through his guardian ad litem Richard de Villiers, filed this civil rights action under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and state law claiming that he suffered injuries following a December 2011 arrest. He asserted claims against the City and County of San Francisco ("CCSF"); San Francisco Police Chief Greg Suhr; San Francisco Police Department ("SFPD") Officers Phillip M. Gordon, Glen Paul Minioza, Brian W. Kneuker, Sgt. Carlos Gutierrez, and Sgt. Craig F. Tom; San Francisco Sheriff's Department ("SFSD") Deputies Patrick F. Pene, Julio C. Palencia, Andrew N. Brown, Senior Deputy Paul E. Rapicavoli, and Sgt. Matthew M. O'Shea; CCSF Sheriff Michael Hennessey; and CCSF Nurses Roel L. Lapitan and Frank Latko.

On February 5, 2016, the court denied Defendants' motion for summary judgment as to some claims, but granted it as to Plaintiff's claims for denial of accommodation under the ADA; violation of California Government Code section 845.6; violation of the Bane Act, California Civil Code section 52.1; and negligence. The court also dismissed claims against all defendants except CCSF and Officers Gordon and Minioza. Finally, the court denied as futile Plaintiff's motion to amend the complaint to add a claim for failure to render medical care under the Fourth Amendment. [Docket No. 80 (Order on MSJ).]

Plaintiff now moves for leave to file a motion for reconsideration of the court's February 5, 2016 order granting summary judgment on his negligence claim. [Docket No. 86 (Pl.'s Mot.).] He also seeks clarification of the February 5, 2016 order as to the damages available for his remaining claims and the remaining basis for his claim against CCSF for municipal liability. [Docket No. 95.]

## I. MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

Civil Local Rule 7-9 provides that "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order . . . . No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." N.D. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. N.D. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the court. N.D. Civ. L.R. 7-9(c). Whether to grant leave to file a motion for reconsideration under Rule 7-9 is committed to the court's sound discretion. *See Montebueno Mktg., Inc. v. Del Monte Corp.—USA*, 570 Fed. Appx. 675, 676 (9th Cir. 2014) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007)).

Plaintiff seeks reconsideration of the court's February 5, 2016 order granting summary judgment on his negligence claim based on the court's failure to consider material facts and argument relevant to that claim.

### A. Factual and Procedural Background

The court recited the relevant facts at length in its summary judgment order. Order on MSJ at 2-5. In brief, on the night of December 31, 2011, Plaintiff was arrested in the lobby of the Four Seasons Hotel in San Francisco for public intoxication in violation of California Penal Code

section 647(f). Plaintiff was arrested and taken into custody by Defendants Phillip M. Gordon and Glen Paul Minioza, San Francisco Police Department Officers. Gordon filled out a Public Intoxication Report in connection with the arrest, checking boxes indicating that Lawman exhibited a flushed face, drooping eyelids, slow and slurred speech, and a moderate odor of alcohol. He also handwrote the following observations:

> I was dispatched to 757 Market St regarding an intoxicated trespasser. I contacted Richard [sic] Lawman. Lawman refused to leave. He smelled heavily of alcoholic beverage and could not answer my questions. I determined Lawman was unable to care for himself as a result of his intoxication.

However, witnesses who observed Plaintiff immediately before the officers arrived contradicted the statements in Gordon's report. These witnesses testified that Plaintiff's eyes were not bloodshot, his eyelids were not drooping or heavy, and he spoke clearly and at a normal pace. Additionally, neither witness smelled alcohol on Plaintiff.

After his arrest, Officer Brian W. Kneuker transported Plaintiff to County Jail 1 as a "release when sober," which is a four-hour minimum detention in a sobering cell. Once at the jail, a nurse performed a triage assessment indicating that Plaintiff's general appearance was unremarkable and noting that Plaintiff stated that he "has no urgent medical condition." Plaintiff was then placed in a sobering cell and observed by nursing staff and deputies four times per hour.

The jail discharged Plaintiff at 1:40 a.m. on January 1, 2012. About fourteen hours later, a witness observed Plaintiff walking down Market Street in front of the Four Seasons without a shirt or shoes. Witnesses later saw Plaintiff walking shirtless and shoeless in lanes of traffic on Highway 80. At approximately 10:55 p.m., Plaintiff was struck and severely injured by a pickup truck traveling 40-50 miles per hour. According to Plaintiff's medical expert, Plaintiff suffers from longstanding bipolar disorder and was experiencing a manic episode on the dates in question.

At summary judgment, the court concluded that Plaintiff had demonstrated the existence of a dispute of material fact as to whether his arrest for public intoxication was supported by probable cause and the existence of a citywide policy, practice, or custom regarding the improper arrest of individuals for violations of section 647(f). The court accordingly denied summary judgment on his Fourth Amendment unlawful arrest and false arrest/false imprisonment claims, as well as his

1    municipal liability claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658
2    (1978)). The court also denied summary judgment on Plaintiff's claim of wrongful arrest under
3    the ADA, 42 U.S.C. § 12132.

4    The court granted summary judgment on Plaintiff's remaining claims, including
5    negligence, which is the subject of his current motion. Plaintiff alleged that the individual
6    defendants, including the arresting officers and the SFSD deputies at the jail, breached their duties
7    to use reasonable care to avoid injury to him, proximately causing him to suffer catastrophic
8    injuries. In granting summary judgment on this claim, the court held that Defendants did not owe
9    Plaintiff a duty of care. Order on MSJ at 27-29.

### B.     The Present Motion

In this motion, Plaintiff argues that the court held that Defendants did not owe Plaintiff a duty of care because his injury was not foreseeable, even though Defendants did not make that argument in their motion for summary judgment. Plaintiff contends that because Defendants did not raise the issue, Plaintiff did not brief it, offer evidence, or present argument bearing on the issue. He asks for the opportunity to submit argument as well as evidence of foreseeability. Plaintiff also argues that the court failed to consider certain facts material to determining the foreseeability of the harm he suffered.

Defendants asserted several arguments supporting summary judgment on Plaintiff's negligence claim. They argued that negligence claim failed because 1) the individual defendants were immune from liability pursuant to two California statutory immunities, California Penal Code section 847(b)(1) and California Government Code section 846; 2) Defendants owed no legal duty of care to Plaintiff; 3) there was no special relationship between Defendants and Plaintiff; and 4) Plaintiff could not show that his arrest, detention, or release were a proximate cause of his injuries (i.e., could not show causation).[1] [Docket No. 39 (Defs.' Mot.) at 23-24.]

Plaintiff correctly observes that Defendants did not explicitly argue that they did not owe

---

[1] The court held that the statutory immunities did not apply and did not reach the parties' arguments on causation. Order on MSJ at 26-27, 29 n.18.

4

Plaintiff a duty of care because his injury was not foreseeable. Nevertheless, the issue of foreseeability was squarely before the court. In his opposition to Defendants' motion, Plaintiff acknowledged that whether Defendants owed him a duty of care was a question of law. He argued that as arresting officers and jailers, Defendants owed Plaintiff a duty of care arising from a special relationship. Plaintiff cited only two cases in support of his position: *Giraldo v. California Department of Corrections*, 168 Cal. App. 4th 231, 252-53 (2008), in which the court held that "there is a special relationship between jailer and prisoner which imposes a duty of care on the jailer to the prisoner," and *Lum*, 756 F. Supp. 2d at 1255, in which the court, relying on *Giraldo*, held that "[o]fficers and jailers have a duty to act with reasonable care toward those in their custody." [Docket No. 48 (Pl.'s Opp'n) at 26-27.] *Giraldo* and *Lum* each discussed the concept of foreseeability in determining the existence of a duty of care between officers/jailers and prisoners.

In the order on Defendants' motion, the court described the facts in *Giraldo* and noted that "[t]he court in *Giraldo* emphasized that 'the most important consideration in establishing duty is foreseeability.'" Order on MSJ at 27, n.17 (citing *Giraldo*, 168 Cal. App. 4th at 250). The court also discussed *Lum* at length, including the facts relevant to foreseeability:

> Lawman also relies on *Lum I*, in which the court held that "[o]fficers and jailers have a duty to act with reasonable care toward those in their custody." 756 F. Supp. 2d at 1255. In *Lum I*, the decedent was arrested pursuant to section 647(f). At the time of his arrest, one of the arresting officers commented that the decedent, who was under psychiatric care for bipolar disorder, was "probably just off his meds." *Id.* at 1246. When he was arrested, the decedent "had a laceration on his foot, difficulty walking, vomit on his shirt, and was behaving strangely." *Id*. Although no alcohol was found in the decedent's system, the arresting officers did not take any action to evaluate his physical or mental state. *Id*. They booked the decedent into the county jail on a "'kickout' charge, meaning that he would be released from jail six hours later." *Id*. At his booking, the decedent informed an officer of his bipolar disorder and that he took medication, and jail staff later observed the decedent having hallucinations, including "attempting to open imaginary doors and speaking to himself." *Id*. The decedent also suffered a seizure while in jail. *Id*. at 1247. The police officers released the decedent about six hours after his arrest, without ever having obtained medical treatment for him or a medical or psychological evaluation of him. His body was found in the San Joaquin River several days later; the cause of death was accidental drowning. *Id*.

5

> The court in *Lum I* carefully analyzed the reasoning in *Giraldo* and concluded that the jailer-prisoner special relationship is "analogous to law enforcement officers and arrestees," and held that "it is reasonably foreseeable that an arrestee who is in need of medical attention would be at risk in a custodial environment or upon release into a situation made dangerous by his medical condition, or without first having received proper medical attention." *Id*. at 1255. Accordingly, the court concluded that the defendants owed the decedent a duty of care.

Order on MSJ at 27-28. In concluding that Defendants did not owe Plaintiff a duty of care, the court distinguished the facts of *Lum* from this case:

> In *Lum I*, there was ample evidence that the decedent was experiencing a mental health emergency during his arrest and incarceration that required medical attention. In this case, as discussed above, a reasonable jury could conclude that the arresting officers should have known that Lawman had a disability. However, having a mental disability is not equivalent to having a mental disability that requires immediate medical attention. Unlike *Lum I*, there are no facts to indicate that Lawman was in medical crisis at the time of his arrest that created a foreseeable risk of harm upon his release. Moreover, Lawman was triaged at the jail, and he reported that he had no urgent medical condition. Lawman was observed several times per hour by nurses and deputies and his observation record contains no entries of unusual behavior. While the decedent in *Lum I* was observed hallucinating in his holding cell and suffered from a seizure, here, the only evidence of Lawman's behavior at the jail is M. M.'s observation that Lawman "had peanut butter smeared on him" and "was acting loopy and restless." Based on these facts, and the absence of evidence that Lawman was actually experiencing a mental health emergency during his arrest and detention, the court cannot conclude that it was reasonably foreseeable that Lawman would be at risk "upon release into a situation made dangerous by his medical condition, or without first having received proper medical attention." *Id*. at 1255. Accordingly, the court finds that Defendants did not owe Lawman a duty of care.

Order on MSJ at 28-29.

The authority offered by Plaintiff in support of his negligence claim specifically held that the determination of whether officers and/or jailers owe a prisoner a duty of care includes a foreseeability analysis. Plaintiff was thus on notice that foreseeability, as it relates to the determination of the existence of a duty of care, was at issue in the motion for summary judgment because he solely relied on cases that so held. Plaintiff acknowledged as much at the hearing, as shown by the following exchange:

> **Court:** There's an issue about duty of care. I read *Lum* . . . for the proposition that there's a special relationship between an arresting

6

> officer and arrestee. Is your reading of *Lum*, Mr. May, that that always exists or is it that it can be under certain circumstances?
>
> **Mr. May:** No. I believe it always exists. This is that classic situation where you take somebody into custody. Now you're responsible for their welfare. So when I say always exists, I mean with regard to providing certain medical treatment, things like that.
>
> **Court:** But when we're just speaking of duty of care and whether there's a special relationship, my question is, as a matter of law, would you argue that there's always a special relationship between an arresting officer and an arrestee or do I need to look at the circumstances to determine vulnerability and -- and all that?
>
> **Mr. May:** I think -- yeah, I think the question might be -- might be broad in that you can't just say whether somebody owes somebody else a duty of care in a vacuum. *I think that the question has to be focused on some context. In this case it would be does an officer owe a duty of care to an arrestee to furnish medical care if the person needs it* because that's what – that's what we're dealing with here. And I think the answer to that question is yes, because that is the *Lum* case.

[Docket No. 73 (Dec. 17, 2016 Hr'g Tr.) at 44-45 (emphasis added).] In other words, Plaintiff acknowledged that in determining whether an officer and/or jailer owes a duty of care to a prisoner, the court must account for context. Plaintiff asserted that the relevant context here was Plaintiff's need for medical care. He reiterated his reliance on *Lum*, in which the court held that the defendant officers and jailers owed a duty of care to an individual whose need for medical attention rendered the "risk in a custodial environment or upon release into a situation made dangerous by his medical condition" foreseeable. *Lum*, 756 F. Supp. 2d at 1254-55. The court heard the parties' arguments on foreseeability in connection with duty of care, (Hr'g Tr. at 46-50), and applied *Giraldo* and *Lum* in concluding that Defendants did not owe Plaintiff a duty of care. In sum, the court finds that the issue of foreseeability in the duty of care analysis was squarely before the court, and that Plaintiff had the opportunity to present argument as well as evidence of foreseeability prior to the court's ruling.

The existence of a duty of care is a question of law for the court. *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986). "'[D]uty' is not an immutable fact of nature 'but only an expression of the sum total of those considerations or policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Id*. (citation omitted). Courts take into account a number of considerations to determine whether it is appropriate to depart from the general rule that "persons

have a duty 'to use ordinary care to prevent others being injured as a result of their conduct,'" including foreseeability of harm to the plaintiff. *See id*. (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968)). As noted by the court in *Giraldo*, "the most important consideration 'in establishing duty is foreseeability.'" 168 Cal. App. 4th at 250. The California Supreme Court has explained that "the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed. . . ." *Cabral v. Ralphs Grocery Store*, 51 Cal. 4th 764, 772 (2011) (quoting *Ballard*, 41 Cal. 3d at 572 n.6). If the court concludes that a defendant owed the plaintiff a duty of care, the jury "may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place." *Cabral*, 51 Cal. 4th at 773.

The court in *Lum*, relying on *Giraldo*, found that officers and jailers owed a duty to the plaintiff-arrestee based on his vulnerability, as well as the foreseeability of risk in detaining and releasing an arrestee who is in need of medical attention. *Lum*, 756 F. Supp. 2d at 1254-55. This was consistent with the court's guidance in *Cabral* that the court must assess the foreseeability of injury from "the category of negligent conduct at issue." *See Cabral*, 51 Cal. 4th at 773. The court agrees with *Lum* and *Giraldo* that officers and jailers owe a duty of care to vulnerable arrestees or prisoners, including those in need of medical attention. Here, the court concluded that "there [were] no facts to indicate that Lawman was in medical crisis at the time of his arrest." Order on MSJ at 28. The court acknowledges that it would have been more accurate to reach the conclusion that Defendants did not owe Plaintiff a duty of care by expressly following *Lum* and *Giraldo*'s holdings that officers and jailers owe a duty of care to vulnerable arrestees or prisoners, including those in need of medical attention, given the court's determination that Plaintiff was not in medical crisis at the time of his arrest. However, the result is the same: since the facts did not support that Plaintiff needed medical attention at the time of his arrest or during his detention, Plaintiff was not a person to whom Defendants owed a duty of care, i.e., an arrestee in need of medical attention.

8

Plaintiff argues that by examining foreseeability, the court "displaced the jury's fact-finding role." Pl's Mot. at 3. However, "a determination that the defendant owed the plaintiff no duty of ordinary care . . . is for the *court* to make," and such a determination includes an assessment of "foreseeability of injury from 'the category of negligent conduct at issue.'" *Cabral*, 51 Cal. 4th at 772-773 (citations omitted; emphasis in original).

Plaintiff also argues that the court failed to consider certain material facts. Specifically, when Plaintiff was arrested, he did not have keys, a cell phone, or a wallet in his possession. Plaintiff described these facts in the statement of facts section of his opposition brief, (*see* Pl.'s Opp'n at 4), and argues that the court appears to have omitted these facts in considering "whether the arresting officers, Gordon and Minioza, had reason to know that Plaintiff would pose a danger to himself if not taken for medical evaluation." Pl.'s Mot. at 1. He contends that these facts are material to determining the foreseeability of the harm Plaintiff suffered because they show that Plaintiff had no means to arrange for basic necessities, such as food and shelter. These facts are relevant to the issues of breach and causation, as acknowledged in Plaintiff's brief.[2] They are not relevant to the court's determination of whether defendants owed Plaintiff a duty of care, which is the only issue raised by Plaintiff in the instant motion.

Plaintiff's motion for leave to file a motion for reconsideration is denied.

## II. REQUEST FOR CLARIFICATION OF EFFECT OF SUMMARY JUDGMENT ORDER

Plaintiff also seeks clarification as to the scope of damages that he may argue at trial in light of the MSJ Order. At the February 17, 2016 case management conference, the court ordered each party to submit a brief regarding the availability of damages. The parties timely filed their briefs. [Docket Nos. 95 (Pl.'s Brief); 96 (Defs.' Brief).] In Plaintiff's brief, he concedes that he found no authority addressing whether his remaining claims provide a basis for seeking damages for the injuries he sustained when he was struck by a vehicle. Given the dismissal of Plaintiff's

---

[2] Plaintiff argued that there was a triable question about whether Defendants' actions increased his harm because they deprived Plaintiff of sleep and then "discharged him without any property or means to find shelter," asserting that "[s]leep deprivation worsens manic decompensation and diminishes appropriate judgment." Pl.'s Opp'n at 27.

claims that were based on Defendants' alleged failure to recognize Plaintiff's need for medical care, the court concludes that Plaintiff may only seek damages related to his wrongful arrest and detention, and not his subsequent injuries after his release.

Plaintiff also asks for clarification regarding the scope of his *Monell* claim. Plaintiff's *Monell* claim is limited to allegations of unconstitutional arrests for violation of section 647(f). *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("the liability of municipalities . . . is contingent on a violation of constitutional rights."). In other words, Plaintiff cannot pursue a *Monell* claim based on his allegation that Defendants' "failure to summon medical care (and the resulting injuries) were motivated by [CCSF's] informal policy of making unlawful 647(f) arrests." *See* Pl.'s Brief at 1.

**IT IS SO ORDERED.**

Dated: March 11, 2016



Donna M. Ryu
United States Magistrate Judge